[No. B107758. Second Dist., Div. Five. July 29, 1997.]

GENEVA HARPER, Plaintiff and Appellant, v.
WAUSAU INSURANCE COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.C.

COUNSEL

Alan Finestone and Charles J. Fleishman for Plaintiff and Appellant.

Zelle & Larson and Devera L. Petak for Defendant and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Plaintiff, Geneva Harper, appeals from a summary judgment in favor of defendant, Wausau Insurance Company (Wausau). The present case involves a complaint for breach of contract and of the implied covenant of good faith and fair dealing on the theory plaintiff was a third party beneficiary of a medical payment provision in an insurance contract between Nationwide Insurance Company, a Wausau company, and L. A. Towers, Inc. In the published portion of this opinion, we discuss the existence of a triable issue as to whether plaintiff was an intended third party beneficiary of the medical payment insurance policy who may directly assert a cause of action for breach of contract against the insurer. For the reasons stated below, we conclude a triable issue existed as to whether she was an intended beneficiary of the medical payment provision of the policy who may seek contract damages. On that ground, we reverse the judgment.[1]

---

[1] We need not address the arguments concerning the alleged tortious breach of the insurance contract. As will be noted, we conclude a triable issue existed as to plaintiff's rights to contract damages. Hence, the summary judgment motion should have been denied. (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 284 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 271 [62 Cal.Rptr. 12, 431 P.2d 636]; *Walter E. Heller*

## II. BACKGROUND

The complaint, which was filed on August 22, 1995, alleged causes of action for breach of contract and the implied covenant of good faith and fair dealing based upon defendant's failure to pay plaintiff's medical expenses after she was injured in a slip and fall outside of L.A. City Tower, Inc., on April 16, 1993. The complaint alleged Wausau, in a written contract of insurance with L. A. City Tower, Inc., agreed to pay up to $5,000 of medical bills of anybody who was injured on the property owned by the insured. Plaintiff alleged she was a third party beneficiary of the insurance contract. She further alleged she and L. A. City Tower had fully performed under the contract, including reporting the losses and claims and paying the premiums. Wausau failed and refused to respond to plaintiff's demand for payment. Defendant answered the complaint and asserted a number of affirmative defenses including: (1) plaintiff was not an insured; (2) plaintiff lacked standing to bring the causes of action alleged in the complaint; and (3) plaintiff failed to perform all terms of the policy. Defendant subsequently moved for summary judgment or adjudication on the grounds plaintiff could not sue for breach of contract or the implied covenant of good faith and fair dealing because she was not a party to the insurance contract nor was she intended as a third party beneficiary. Further, a ground for the motion was that she failed to give proper notice pursuant to the terms of the policy.

In support of the motion, defendants presented and plaintiff did not dispute the following facts. She fell on April 16, 1993, at L. A. City Tower and 32d Street Market in Los Angeles. Plaintiff filed an action to recover damages from her fall entitled Harper v. L. A. City Tower, Inc. (Super. Ct. L.A. County, 1993, No. BC083543). Nationwide Insurance Company (Nationwide), a Wausau company, issued a commercial general liability policy No. 73-04-PR50722690001 to L. A. City Tower, Inc. Pursuant to the coverage in Nationwide's policy, it defended L. A. City Tower, Inc., in the underlying action. A court trial of the underlying action resulted in judgment for the defense after the judge determined plaintiff failed to establish by a preponderance of the evidence that L. A. City Tower would have discovered the dangerous condition by the exercise of reasonable care.

L. A. City Tower, Inc., was insured by Nationwide for "bodily injury and property damage liability" under "Coverage A." Plaintiff filed this action to recover benefits under the Nationwide policy under the "Coverage C" medical payment provision. The medical coverage provision states: "1.

*Western, Inc.* v. *Tecrim Corp.* (1987) 196 Cal.App.3d 149, 156 [241 Cal.Rptr. 677].) On remand, defendant is free to pursue its summary adjudication requests. (E.g., *Wilson* v. *Blue Cross of So. California* (1990) 222 Cal.App.3d 660, 674-675 [271 Cal.Rptr. 876].)

Insuring Agreement. [¶] a. We will pay medical expenses as described below for 'bodily injury' caused by an accident: [¶] (1) On premises you own or rent; [¶] (2) On ways next to premises you own or rent; or [¶] (3) Because of your operations; [¶] provided that: [¶] (1) The accident takes place in the 'coverage period' and during the policy period; [¶] (2) The expenses are incurred and reported to us within one year of the date of the accident; and [¶] (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we may reasonably require. [¶] b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for: [¶] (1) First aid at the time of the accident; [¶] (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and (3) Necessary ambulance, hospital, professional nursing and funeral services." Excluded from the medical payment benefits under "Coverage C" were "any insured" persons. Section II defined "who is an insured" with respect to the conduct of the business, as individuals and their spouses, partnership or joint venture, its members and partners, an organization and its executive officers, directors and stockholders with respect to their duties and liabilities. Plaintiff requested payment from Nationwide under the medical payment provision for medical costs totaling $10,254.11. Plaintiff is not a named insured in the Nationwide policy. Plaintiff did not pay any premiums under the Nationwide policy.

The trial court granted the summary judgment motion. The trial court entered a judgment on the complaint from which this timely appeal followed.

## III. Discussion

### A. *Standard of Review*

Summary judgment is granted when the moving party establishes that there are no triable issues of any material fact. A summary judgment motion is directed to the issues framed by the pleadings. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207]; *Addy* v. *Bliss & Glennon* (1996) 44 Cal.App.4th 205, 215 [51 Cal.Rptr.2d 642]; *Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 536 [249 Cal.Rptr. 5].) Further, the moving party must establish he or she is entitled to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) A defendant proves a claim has no merit if he or she establishes one or more of the elements of the cause of action cannot be separately established. (Code Civ. Proc., § 437c, subd. (n)(1).) Code of Civil

Insuring Agreement. [¶ a. We will pay medical expenses as described below for 'bodily injury' caused by an accident: [¶ (1) On premises you own or rent; [¶ (2) On ways next to premises you own or rent; or [¶ (3) Because of your operations; [¶ provided that: [¶ (1) The accident takes place in the 'coverage territory' and during the policy period; [¶ (2) The expenses are incurred and reported to us within one year of the date of the accident; and [¶ (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we may reasonably require. [¶ b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for: [¶ (1) First aid at the time of the accident; [¶ (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and (3) Necessary ambulance, hospital, professional nursing and funeral services." Excluded from the medical payment benefits under "Coverage C" were "any insured" persons. Section II defined "who is an insured" with respect to the conduct of the business, as individuals and their spouses, partnership or joint venture, its members and partners, an organization and its executive officers, directors and stockholders with respect to their duties and liabilities. Plaintiff requested payment from Nationwide under the medical payment provision for medical costs totaling $10,254.11. Plaintiff is not a named insured in the Nationwide policy. Plaintiff did not pay any premiums under the Nationwide policy.

Procedure section 437c, subdivision (o)(2) provides: "For purposes of motions for summary judgment and summary adjudication: [¶] . . . [¶] A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." An appellate court reviews the trial judge's decision to grant summary judgment de novo. (*Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; *Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926, 929 [30 Cal.Rptr.2d 440, 873 P.2d 613].) The trial judge's stated reason for granting summary judgment is not binding on us because we review its ruling, not its rationale. (*Szadolci* v. *Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356]; *Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

The issue of whether plaintiff is entitled to the medical payment requires an interpretation of the insurance policy. ■ The standard of review of an insurance policy has been described by the California Supreme Court as follows: "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. (See *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 . . . (*AIU*).) The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' (*Id.*, § 1649; see *AIU, supra*, 51 Cal.3d at p. 822.) This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.' (*AIU, supra*, at p. 822.) Only if this rule does not resolve the ambiguity do we then resolve it against the insurer. (See *AIU, supra*, at p. 822.) [¶] In summary, a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.*

(1986) 41 Cal.3d 903, 916-917 & fn. 7 . . . .) This is because '*language in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*' (*Id.*, at p. 916, fn. 7, italics added; cf. Civ. Code, § 1641.)" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545], original italics; accord, *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].) We review the unambiguous terms of the insurance agreement de novo. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 502 [99 Cal.Rptr. 617, 492 P.2d 673]; *U.S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65]; *Hughes* v. *Mid-Century Ins. Co.* (1995) 38 Cal.App.4th 1176, 1181-1182 [45 Cal.Rptr.2d 302].)

### B. *The Third Party Beneficiary Issue*

■ As a general rule, absent an assignment of rights or a final judgment, a third party claimant may not bring a direct action against an insurance company on the contract because the insurer's duties flow to the insured. (*J.C. Penney Casualty Ins. Co.* v. *M.K.* (1991) 52 Cal.3d 1009, 1018 [278 Cal.Rptr. 64, 804 P.2d 689]; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 889 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 943-944 [132 Cal.Rptr. 424, 553 P.2d 584].) There are several exceptions to the general rule which prohibits a third party claimant from suing an insurer. For example, once a party has a final judgment against the insured, the claimant becomes a third party beneficiary of the insurance policy and may enforce the terms which flow to its benefit pursuant to Insurance Code section 11580.[2] (*Murphy* v. *Allstate Ins. Co.*, *supra*, 17 Cal.3d at pp. 943-944; *Hand* v. *Farmers Ins. Exchange* (1994) 23 Cal.App.4th 1847, 1856-1858 [29 Cal.Rptr.2d 258]; *Woolett* v. *American Employers Ins. Co.* (1978) 77 Cal.App.3d 619, 622 [143 Cal.Rptr. 799].) Further, a claimant may sue the insurer as a third party beneficiary utilizing traditional contract principles. Under California law third party beneficiaries of contracts have the right to enforce the terms of the contract under Civil Code section 1559 which provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Traditional third party beneficiary principles do not require that the person to be benefited be named in the contract. (*Garratt*

---

[2] Insurance Code section 11580, subdivision (b)(2) provides that an insurance policy in this state must contain: "A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

v. *Baker* (1936) 5 Cal.2d 745, 748 [56 P.2d 225]; *Alling* v. *Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1440 [7 Cal.Rptr.2d 718]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 666, pp. 604-605.) A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement. *(Southern Cal. Gas Co.* v. *ABC Construction Co.* (1962) 204 Cal.App.2d 747, 750-752 [22 Cal.Rptr. 540]; *Ascherman* v. *General Reinsurance Corp.* (1986) 183 Cal.App.3d 307, 311 [228 Cal.Rptr. 1].) It is well settled, however, that Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by the agreement. (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 590 [15 Cal.Rptr. 821, 364 P.2d 685]; *Hartman Ranch Co.* v. *Associated Oil Co.* (1937) 10 Cal.2d 232, 244 [73 P.2d 1163].) The Supreme Court has held: "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.]" *(Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at p. 944; accord, *Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782, 794-795 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083].)

Civil Code section 1559 allows a direct action against an insurance company to enforce the terms of a contract which were intended to benefit the third party. In *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at page 943, the Supreme Court, while discussing the circumstances where a third party beneficiary could sue an insurer, held: "A third party beneficiary may enforce a contract expressly made for his benefit. (Civ. Code, § 1559.) And although the contract may not have been made to benefit him alone, he may enforce those promises directly made for him. [Citations.]" In *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1041-1042 [143 Cal.Rptr. 415], the Court of Appeal applied third party beneficiary principles and Civil Code section 1559 to a permissive driver who was not named in the insurance contract of a car involved in an automobile accident. Citing *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at page 943-944 and Civil Code section 1559, the Court of Appeal noted: "We think it is also correct to say that Robert Kessler was not a contracting party. [Citation.] That is not to say, however, that he was not a party to the contract. As a permissive user he was an insured under the terms of the policy. At the very least, as one of a class for whose benefit the policy was expressly made, he was an express third party beneficiary. [Citations.] A third party beneficiary may, of course, enforce a contract expressly made for his benefit. [Citations.]" *(Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group, supra,* 76 Cal.App.3d at pp. 1042-1043; see *Cancino* v. *Farmers Ins. Group* (1978) 80 Cal.App.3d 335, 340 [145 Cal.Rptr. 503].)

Third party beneficiary principles have been applied by California courts in various circumstances involving insurers. For example, in *Bass* v. *John Hancock Mut. Life Ins. Co.* (1974) 10 Cal.3d 792, 797, footnote 4 [112 Cal.Rptr. 195, 518 P.2d 1147], the Supreme Court noted that an employee was the third party beneficiary of a group life insurance program negotiated between his union and employer. However, the court went further and indicated the employee's relatives who had the right to recover the benefits were likewise third party beneficiaries. (*Ibid.*) In *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 675, footnote 13 [79 Cal.Rptr. 106, 456 P.2d 674], a case involving a third party claimant's damage suit against an insurer, the Supreme Court adverted to third party beneficiary and other policy principles and held: "Similar considerations in the present case impel the holding that the automobile liability insurer incurs a direct duty to those members of the public, situated as the plaintiff, who stand to benefit from the validity of a contract of insurance which protects them against the risk of their own injury or death." (*Id.* at p. 676.) In *Shapiro* v. *Republic Indem. Co. of America* (1959) 52 Cal.2d 437, 440 [341 P.2d 289], the Supreme Court held that injured plaintiffs who sued the insured's insurer pursuant to Insurance Code section 11580, subdivision (b) were third party beneficiaries of the policy. As noted previously, in *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group, supra,* 76 Cal.App.3d at pages 1042-1043, the Court of Appeal held that a permissive driver of a car was a third party beneficiary of the owner's policy.

 Defendant argues that plaintiff is not entitled to enforce the medical payment provision because she was not an intended third party beneficiary. Plaintiff counters the trial court erred in granting summary judgment because defendant did not establish as a matter of law that she was not an intended third party beneficiary of "Coverage C" of the insurance policy. As noted above, the medical coverage provision states: "1. Insuring Agreement. [¶] a. We will pay medical expenses as described below for 'bodily injury' caused by an accident: [¶] (1) On premises you own or rent; [¶] (2) On ways next to premises you own or rent; or [¶] (3) Because of your operations; [¶] provided that: [¶] (1) The accident takes place in the 'coverage period' and during the policy period; [¶] (2) The expenses are incurred and reported to us within one year of the date of the accident; and [¶] (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we may reasonably require. [¶] b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for: [¶] (1) First aid at the time of the accident; [¶] (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and (3) Necessary ambulance, hospital, professional nursing and funeral services."

Defendant argues that plaintiff is not entitled to enforce the medical payment provision because she was not an intended third party beneficiary. Plaintiff counters the trial court erred in granting summary judgment because defendant did not establish as a matter of law that she was not an intended third party beneficiary of "Coverage C" of the insurance policy. As noted above, the medical coverage provision states: "1. Insuring Agreement. [¶] a. We will pay medical expenses as described below for 'bodily injury' caused by an accident: [¶] (1) On premises you own or rent; [¶] (2) On ways next to premises you own or rent; or [¶] (3) Because of your operations; [¶] provided that: [¶] (1) The accident takes place in the 'coverage territory' and during the policy period; [¶] (2) The expenses are incurred and reported to us within one year of the date of the accident; and [¶] (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we may reasonably require. [¶] b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for: [¶] (1) First aid at the time of the accident; [¶] (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and (3) Necessary ambulance, hospital, professional nursing and funeral services."

Although there are no California cases which have addressed the specific issue raised in this appeal, a number of other authorities have concluded medical payment provisions of the type presently before us provide exceptions to the general rule barring actions against the insurer for liability. This is because the medical coverage provisions provide direct obligations on the part of the insurer to the intended beneficiaries. (See *Donald* v. *Liberty Mut. Ins. Co.* (7th Cir. 1994) 18 F.3d 474, 481 [employee injured on university property could maintain direct action against insurer for payment of medical benefits as third party beneficiary under provision]; *Hunt* v. *First Ins. Co. of Hawaii Ltd.* (1996) 82 Hawaii 363 [922 P.2d 976, 980-981] [slip-and-fall customer was intended beneficiary of medical payment provision and could bring direct action without violating general prohibition actions by third party against tortfeasor's insured]; *Desmond* v. *American Ins. Co.* (Mo.App. 1989) 786 S.W.2d 144, 145-147 [slip-and-fall patron of theater could maintain direct action against insurance company as third party beneficiary of medical payment provision]; 8A, Appleman & Appleman, Insurance Law and Practice (1981) § 4902, pp. 228-229; contra *Zegar* v. *Sears Roebuck and Co.* (1991) 211 Ill.App.3d 1025 [156 Ill.Dec. 454, 570 N.E.2d 1176, 1179] [slip-and-fall plaintiff was incidental beneficiary of premises' no-fault medical payment provision who had no direct cause of action against insurer].) Such provisions are not dependent upon the liability of the insured and are considered to be separate contractual obligations from the rest of the policy. (See *Donald* v. *Liberty Mut. Ins. Co.*, *supra*, 18 F.3d at p. 481; *Maxwell* v. *Southern American Fire Insurance Co.* (Fla.Dist.Ct.App. 1970) 235 So.2d 768, 769-771; *Hunt* v. *First Ins. Co. of Hawaii Ltd.*, *supra*, 922 P.2d at pp. 980-981; *Garcia* v. *Lovellette* (1994) 265 Ill.App.3d 724 [203 Ill.Dec. 376, 639 N.E.2d 935, 938-939]; *Hein* v. *American Family Mutual Insurance Co.* (Iowa 1969) 166 N.W.2d 363, 365; *Lavin* v. *State Farm Mutual Automobile Insurance Co.* (1964) 193 Kan. 22 [391 P.2d 992, 995-997]; *Blocker* v. *Sterling* (1968) 251 Md. 55 [246 A.2d 226, 230-231]; *Desmond* v. *American Ins. Co.*, *supra*, 786 S.W.2d at pp. 145-147; *Johnson* v. *New Jersey Mfrs. Indemnity Ins. Co.* (1961) 69 N.J.Super. 184 [174 A.2d 4, 8]; *Motto* v. *State Farm Mutual Automobile Insurance Co.* (1969) 81 N.M. 35 [462 P.2d 620, 621-622]; *Martinez* v. *Gulf Insurance Company* (1961) 68 N.M. 90 [358 P.2d 1003, 1005-1007]; *Nagy* v. *Lumbermens Mutual Casualty Company* (1966) 100 R.I. 734 [219 A.2d 396, 398]; *Moorman* v. *Nationwide Mutual Insurance Company* (1966) 207 Va. 244 [148 S.E.2d 874, 876-878]; *Maziarski* v. *Bair* (1996) 83 Wn.App. 835 [924 P.2d 409, 413-414]; *Carney* v. *Erie Ins. Co., Inc.* (1993) 189 W.Va. 702 [434 S.E.2d 374, 377]; *Severson* v. *Milwaukee Auto. Ins. Co.* (1953) 265 Wis. 488 [61 N.W.2d 872, 875, 42 A.L.R.2d 976].)

As one commentator has noted: "Medical provisions of liability, or homeowner's, policies are a form of minimal group accident insurance provided at minimal cost with a named insured as the entity through whom

the coverage is issued. . . . [¶] Generally, medical payment clauses are considered to constitute separate accident insurance coverage. Such coverage is divisible from the remainder of the policy, and creates a direct liability to the contemplated beneficiaries. The purpose is to grant peace of mind and create a fund for the payment of medical services so that those injured will not necessarily be contemplating how to impose liability upon the insured. And, with this in mind, a broad and liberal interpretation will be given. [¶] Such provision is the separate obligation of the insurer, independent of its obligation to pay sums of money as damages under the liability features of the contract. It has no relevance to the financial responsibility law. Nor is liability for such payment in any way dependent upon negligence of the insured. . . ." (8A, Appleman & Appleman, Insurance Law and Practice, *supra*, § 4902, pp. 228-230, fns. omitted.)

 Here, the insurance policy contained a liability provision based on fault ("Coverage A") and a medical payment provision, based on injury on the property ("Coverage C"). The express language of "Coverage C" plainly indicates it is meant to directly confer a benefit upon third parties who are injured on the owner's property. The payment is premised on the happening of the event and is *not* premised on fault. Thus, the insurer undertook a separate and direct obligation to pay to the medical expenses of any persons injured on the owner's property regardless of its insured's negligence. Accordingly, the payments were plainly intended to directly benefit plaintiff and were not incidental or remote.

Citing *Jones* v. *Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1722-1725 [33 Cal.Rptr.2d 291], a case involving an alleged breach of the implied covenant of good faith and fair dealing, defendant argues there was no intent to benefit plaintiff in the medical coverage provision because "[w]hen contracting for liability insurance, an insured seeks its own protection, not the protection of others." The relevant circumstances in *Jones* were as follows: "Jones had leased commercial property in Danville from Danville L&M Limited (lessor) for the operation of their restaurant. Pursuant to the lease agreement, lessor was obligated to maintain rental income insurance providing coverage for damage or destruction from fire or other perils. The lease stated this coverage would be at Jones's expense and the policy would provide that the loss would be payable to lessor. The lease also stated that during any repairs to the premises after damage or destruction from a peril, Jones's rent would be equitably reduced to the extent lessor received proceeds from the rental income insurance. The insurance policy lessor obtained, through Aetna, included a 'rental value endorsement' which stated Aetna would be liable for the 'ACTUAL LOSS SUSTAINED by the insured resulting directly from necessary untenantability, caused by damage to or

destruction of the building(s) or structure(s) as furnished and equipped by the insured, by a peril not excluded in this policy. . . .' " (*Id.* at p. 1721.) We disagree with defendant's argument for several reasons.

First, as noted above and contrary to defendant's assertion, the medical payment language at issue here is not a liability provision but a direct and separate obligation in the policy to pay the medical expenses of persons injured on its insured's property. The provision specifically states the defendant will pay "without regard to fault." Therefore, because plaintiff was injured on the property, she is a member of the class of persons protected under the policy.

Second, defendant did not establish or present any evidence showing that the parties intended this provision to benefit only the insured. Moreover, as one commentator has noted in concluding such provisions are intended to benefit the injured third party: "Medical payments provisions are found in almost every type of liability insurance. Thus, they appear in contracts of public liability coverage, . . . (owner's, landlord's and tenants), contractor's, garage, and homeowner's, as well as comprehensive personal liability and sports coverage. The purpose is not only the salutary one of alleviating the mind of the one injured from concern over resources with which to pay such obligations, but to dissuade the one injured from thinking up theories upon which to sue the insured. And since the reduction of litigation is a desirable objective, certainly that is not improper. [¶] In contrast to automobile coverage, this provision is not designed to protect the insured from his legal liability but to insure the payment of medical expenses. It does not affect the liability limits, although . . . the two may impinge upon each other. The policy may limit the class of persons to whom such coverage is applicable." (8A, Appleman & Appleman, Insurance Law and Practice, *supra*, § 4902.05, pp. 232-233.)

Third, *Jones* is distinguishable from the case at bench because it did not involve a payment provision indicating that the injured person's medical costs would be paid without regard to fault. *Jones* involved an insurance provision for rental income for damage or destruction from fire or other perils which was payable to the lessor, who was obligated to maintain the policy at the lessee's expense. The court in *Jones* concluded the lessee was not entitled to enforce the aforementioned policy provision. In this case, unlike in *Jones*, the policy provision expressly confers a benefit directly on third parties who are injured on the owner's property. As an intended third party beneficiary, plaintiff had a right to enforce the contract. (Civ. Code § 1559; *Murphy* v. *Allstate Ins. Co., supra*, 17 Cal.3d at p. 943.)

C. *Other Issues\**

. . . . . . . . . . . . . . . . . . . . . . . . . .

IV. Disposition

The judgment is reversed. Plaintiff, Geneva Harper, is to recover her costs on appeal from defendant, Wausau Insurance Company.

Armstrong, J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied August 20, 1997.

---

\*See footnote, *ante*, page 1079.